ROE, *cas. ejec.*, and ELIZABETH GRUBB, tenant, plaintiff in error, *vs.* DOE, *ex. dem.* of JACOB KALB *et al.*, defendants in error.

When the law and the facts of the case have been fairly submitted by the Court to the jury, though the evidence may be conflicting, if there is sufficient evidence to sustain the verdict, a new trial will not be granted.

A new trial will not be granted on the ground of newly discovered evidence, which is merely *cumulative*. Evidence is *cumulative* where it goes to the *fact principally controverted* on the former trial, and respecting which, the party asking for a new trial, produced testimony on the trial of the cause.

Ejectment. Motion for new trial. Decided by Judge WARNER. Fulton Superior Court. April Term, 1867.

This was ejectment for city lot, No. 32, in Atlanta, Georgia, upon the demises of Matthew King, Julius A. Hayden, and Lucinda Cone, as sole heirs-at-law of Reuben Cone, deceased, James F. Alexander and Jacob H. Kalb, commenced in January, 1852. The plea was the general issue and the statute of limitations.

The plaintiff read in evidence a regular chain of title from the State to Kalb, through said parties. It was also shown by the plaintiff, by oral testimony, that Grubb, the husband of the tenant in possession, and one Carmichael, had bought said lot from said Cone on a credit and took his bond for titles to themselves. Grubb died, and then his widow and Carmichael got Cone to take up that bond and give another to Carmichael alone, (to save Grubb's part from his creditors;) that after Cone died, Carmichael, with Mrs. Grubb's consent, transferred the bond to James F. Alexan-

der. He paid to Hayden and Lucinda Cone, (who were the sole heirs and representatives of Cone,) the balance of the purchase money and took a title to the same. Afterwards he sold it to Kalb with the knowledge and approval of Mrs. Grubb. She and Carmichael each gave to Kalb their notes for the rent of the premises, each taking one-half of them, till the end of the year, at the end of which time, Carmichael left, but the widow remained and kept possession of the whole premises, and was so holding when the suit was brought.

On the contrary, the widow claimed, under a lost bond for titles made by Cone to her husband, and she testified to the existence and loss of the same. She denied the request by herself and Carmichael to change bonds, as aforesaid; denied the consenting to the transfer to Alexander, or the sale to Kalb, and denied the attornment to Kalb, setting up that she had been ever since the death of her husband in possession of said lot as her own, under said bond for title. She further testified that before her husband died, Cone said that there was sufficient work in his shop to pay the balance for the land, and that he had agreed to receive payment in work.

Several other witnesses testified to the existence of the bond last mentioned, and to part payment of the purchase money, by Grubb; but it was not shown that all of the purchase money was paid.

After argument had, and the charge of the Court, the jury returned a verdict for the plaintiff for said premises.

The defendant moved for a new trial upon the grounds that the verdict was contrary to the charge of the Court, and to the evidence, and to obtain certain other testimony, and for newly discovered testimony. Accompanying this motion were several affidavits of the following purport:

BENJAMIN KELLY, affiant, was in Atlanta a few days after Cone sold No. 32 to Jas. M. Grubb, and Cone told affiant that he sold lots for $300 each, in three equal payments, the last to be either twenty-one or twenty-two months; that he always wished a man to be very prompt, and if they were not, he would force payment, because he needed money; he said he had sold lots to James M. Grubb and his brother, Thomas

J. Grubb, on the same terms, and pointed out to affiant the lot on which defendant now lives as the one sold to Jas. M. Grubb; he always made bonds for titles, and would not make deeds till the last payment was made. Not knowing whether he could pay promptly, affiant did not purchase. Affiant asked Cone then, if he would take pay in carpenter's work. He said he could not, as he had engaged Thos. M. Grubb to do all his carpenter's work in payment for his lot, and that he was a poor man and he wished to help him as much as he could towards his payment. Affiant then left Cone.

DAVID H. KELLY, affiant, said that he moved to Atlanta, where he still resides, about fourteen years ago, heard about the property now in dispute, became acquainted with Mrs. Grubb and Dr. Alexander, Julius A. Hayden, and L. Immell, as agent for Kalb. Affiant went to the lot one day, in 1858, and saw Geo. Ralph building a pen around the house with plank, up and down, ten or twelve feet high, close up to the house, so as to keep any of the family which Mrs. Grubb had put in the house, from getting out or in; he hollowed to Mrs. Grubb "to take and knock it down;" the house was on the west side of the lot. In 1859, affiant moved into the same house, as Mr. Roberson was moving out, and found a Mr. Cain keeping a little grocery in front of the lot, on the street, on the western half of the lot. Affiant paid Mrs. Grubb $10 00, in advance, as rent for the lot, as well as he can recollect, and Cain got after him about paying her rent, and said Mr. Kalb and L. Immell had given him his house rent free, as long as he would live there. Affiant went to see Immell, and he said if affiant would accept them he would give him papers to live in the house which he had rented, free from rent, as long as he would stay there. Affiant told Immell that was not his way of doing, and asked him how they were trying "to law" Mrs. Grubb out of her rights. He said if they got half the lot they would be satisfied; that they had paid their money for it to another party, and were going to "devil" her out of it, as she had no money to go on at law. Affiant talked with Mrs. Grubb about it. She said that at the time the land was sold, she knew noth-

ing about it, as she was then down sick, and when she heard of it, she was not in a condition to attend to it, as she was then in child-bed.

They undertook to " devil " affiant out of the house he occupied, by throwing their filth into the yard, and he finally left. Mrs. Grubb is negligent of her business, has too much confidence in men's honesty; is not calculated to attend to her affairs, and is easily imposed on. (This affidavit is signed with an X.)

SAMUEL L. ATKINSON, affiant, said he was at Cone's house in September, 1849, to get pay for digging a well in Cone's horse lot. As he went in James M. Grubb and another person came out. Cone said he had just sold James M. Grubb a lot, (pointing it out,) and given him a bond for titles. Early in summer of 1850, he went to James M. Grubb's shop (on the lot in dispute) to tell him he could not work for him, as he had gotten a job in the Georgia Railroad Shop. While he was there Cone came to see if work on his wagon and carriage was done, and found it was done. Cone's servant took the wagon, and Cone started off; Grubb called him back to inquire how they stood, and they had a long conversation together. Cone asked whether he should pay him the money for the work or credit it on the notes, and Grubb preferred the latter. Grubb went out, and soon brought in the bond for titles and some notes, which he had paid. They appeared to have been settled by small payments, credited on the backs of the notes. Affiant asked Grubb to let him read the bond, out of curiosity to see its form. He read it and found it was to Jas. M. Grubb alone by Reuben Cone for the lot on which the shop stood. The bond said if the notes were not punctually paid, it was void. Affiant asked Cone why this was said, and whether, if Grubb failed in the last payment, he would lose the lot and the money already paid. Cone said that was only formal; was intended to make men prompt, but could not be legally enforced after some of the payments had been made, and that he would not and could not enforce such forfeiture, after such past payment. Affiant does not know how much the work

Grubb *vs.* Kalb *et al.*

came to, but it appeared to have been work done at various times, and its value was considerable in amount. The bond was signed by Reuben Cone, and had but one witness, (affiant does not remember the witness,) nor does he recollect more about its contents, because of the lapse of time. The facts already stated "are impressed on his mind," because he then got a job in the Georgia Railroad Shop, and worked there for four or five years. He told these facts to no one till after the said verdict was rendered.

Mrs. GRUBB, defendant, made affidavit that she did not receive the information in those affidavits till after the verdict.

And further, she swore that she could prove the payment of the purchase money for the lot by James Wellborn, and knew she could before the trial, and made efforts to get his testimony, but could not find his residence, but learned during the war that he lived at Columbus, Mississippi, and was then in the Confederate States Army, but she has had no chance to satisfy herself of his residence since; that she thought all this evidence important; that she thought she could obtain it by the next term, and that she was not seeking a new trial for delay only, but to get justice done her in the premises.

The Court refused a new trial, and this is complained of before the Supreme Court.

JETHRO W. MANNING, GARTRELL & JACKSON, for plaintiff in error.

L. E. BLECKLEY, A. W. HAMMOND & Son, for defendant in error.

WARNER, C. J.

The error assigned to the judgment of the Court below in this case is, in refusing to grant a new trial on the grounds spicefied in the motion therefor. There is no alleged error in the charge of the Court to the jury, but the motion for a new trial was made upon the ground that the verdict was contrary to the charge of the Court, contrary to the evidence,

and for newly discovered evidence. The charge of the Court was based upon the evidence in the record; that evidence is *conflicting* upon the main points in the case. It was the exclusive province of the jury to judge of the evidence as well as the *credibility* of the witnesses. If the jury believed the witnesses sworn for the plaintiff, then there is sufficient evidence in the record to sustain the verdict. It has been the uniform rule of this Court, announced in a great number of cases, that when the law and the facts have been fairly submitted to the jury by the Court below, though the evidence may be conflicting, and there is sufficient evidence in the record to sustain the verdict, a new trial will not be granted. Craft vs. Jackson, 4 Geo. R., 360. Garland vs. Milling, 6 Geo. R., 310; Morris vs. Stokes, 27 Geo. R., 239. Scott vs. Newsom, Ibid., 125. Rawson vs. McJunkins, Ibid., 432.

As to the newly discovered evidence, the general rule is, that a new trial will not be granted on the ground of newly discovered evidence, where the evidence so discovered is merely cumulative. Coggin vs. Jones, 29 Geo. R., 257. The 3665th section of the Revised Code recognises this rule: the newly discovered evidence must relate to *new* and *material* facts, not merely *cumulative* in its character. What is to be considered cumulative evidence? This question is very satisfactorily answered in the case of The People vs. The Superior Court of New York, 10 Wendell's R., 285: "Evidence is *cumulative*, when it goes to the *fact principally controverted* on the former trial, and respecting which the party asking for a new trial produced testimony on the trial of the cause." In this case, one of the facts principally controverted on the former trial was, whether the purchase money for the lot in dispute had been paid by Grubb before his death, to Cone, from whom he held a bond for title? Upon that point, several witnesses were examined on the trial. The newly discovered evidence of Benjamin Kelly and Atkinson relates to the payment of the purchase money by Grubb to Cone, for the lot, and is therefore merely *cumulative* evidence upon that that point in the case.

The affidavit of David Kelly states what he saw one Ralph

do, and the conversation he had with other parties; that he paid Mrs. Grubb ten dollars rent for one of the houses on the lot, etc. Taking his statement to be true, and conceding that it would be *competent* evidence on the trial, still it could not change the result of the verdict.

The defendant states that she can prove the payment of the purchase money by Wellborn, and knew she could do so *before the trial.* This might have been a good showing for a continuance of the cause, but is not a valid ground for a new trial. Motions for a new trial upon the ground of newly discovered evidence, are not, as a general rule, favored by the Courts. We have carefully examined this voluminous record, and we cannot find any legal ground upon which to base our judgment for a new trial in the case.

Let the judgment of the Court below be affirmed.