**FIFTH DIVISION**
**MILLER, P. J.,**
**REESE, P. J. and MARKLE, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**March 3, 2021**

# In the Court of Appeals of Georgia

A20A1718. MACON-BIBB COUNTY v. HODGE.

REESE, Presiding Judge.

Carl Hodge was the tennis manager for Macon-Bibb County ("MBC"). After Hodge's termination, he sought a hearing before an MBC hearing officer, who upheld the termination. Hodge then sought certiorari review in the superior court. The superior court found that the hearing officer's decision was arbitrary and capricious, and overturned his termination. We disagree, and for the reasons set forth infra, reverse the decision of the superior court.

Viewed in the light most favorable to the hearing officer's decision,[1] the record shows the following. As the tennis center manager, Hodge was "responsible for

---

[1] See *DeKalb County v. Bull*, 295 Ga. App. 551, 552 (1) (672 SE2d 500) (2009).

managerial work establishing, operating, and maintaining the [MBC] tennis program, tournaments, and facilities." In April 2018, Hodge was served with a lawsuit accusing him of sexually abusing a teenage girl on MBC tennis facilities. Hodge denied the allegations. Hodge informed his supervisor of the lawsuit, and the next day MBC placed Hodge on paid administrative leave. Under the terms of the leave, Hodge was not allowed to visit any MBC recreation facilities or contact any MBC staff.

MBC placed Hodge on paid suspension from April 13, 2018, until August 10, 2018, and unpaid suspension from August 13, 2018, until December 3, 2018. The unpaid suspension letter informed Hodge that excessive absences could result in termination of employment. If MBC did not reinstate Hodge by Friday, November 30, 2018, then it would terminate Hodge the following Monday, December 3.

MBC's personnel policy had the following provision regarding excessive absences:

> Because [MBC] must have reliable employees who can perform their duties as expected on a regular schedule, excessive absences, whether excused or unexcused, including absences caused by illness can result in termination of employment. Six (6) or more absences within a six (6) month period will be considered excessive.

An "[a]bsence" was defined as "[t]he failure of an employee to report for work when scheduled regardless of whether the failure to report is legitimate or unpreventable." An "[e]xcused absence" was defined as "[a] prearranged absence for which the employee obtained prior approval from his/her supervisor or department head, or an absence which in the opinion of the supervisor is due to illness, an unforeseen need or problem which requires being away from the job." The personnel policy further provided: "No employee who is out of work for six (6) consecutive months may remain under [MBC] active payroll, except where the employee has applied for and been approved for long-term disability."

MBC did not reinstate Hodge and terminated his employment on December 3, 2018. Hodge sought review before an MBC hearing officer. After his termination, MBC received a letter from the United States Tennis Association ("USTA"), stating that the United States Center for SafeSport had provided notice to Hodge in June 2018 of an interim suspension. That suspension prohibited Hodge "from participating, in any capacity, in any activity or competition authorized by, organized by, or under the auspices" of the USTA. MBC informed the hearing officer that Hodge had never provided MBC with notice of the suspension, and that this conduct provided additional support for his termination. Hodge testified at the hearing that he had

3

received the e-mail from SafeSport, but did not open the attachment containing his suspension. Hodge's supervisor testified that, had he known of the June 2018 suspension, Hodge would have likely been terminated at that time.

The hearing officer upheld MBC's termination. In concluding that substantial evidence supported MBC's decision to terminate Hodge, the hearing officer found that:

> Mr. Hodge understands that his presence at the tennis facilities would not be acceptable. His position is that he could adequately perform his job duties from off-site. [MBC], on the other hand, contends that Mr. Hodge's presence at the tennis facilities is necessary for him to fully perform his duties. Even assuming that it is *possible* for the tennis facilities to operate without the tennis manager being present, it obviously would not be an ideal situation. [MBC] believes that the tennis center director must be present at the facilities to properly manage his employees, and it is reasonable to think that a manager's ability to fully perform his job duties would be impacted by his inability to be present at the job site. Additionally, it is reasonable to conclude that the USTA's refusal to allow any of its tournaments to be held at a [MBC] facility while Mr. Hodge is participating "in any capacity" would significantly affect his ability to perform his job duties.

The superior court reversed the hearing officer's decision, finding that the decision was arbitrary and capricious. The court reasoned that the evidence was

4

"unequivocal" that Hodge was never scheduled to work, and thus could not have been terminated for excessive absences, and that the hearing officer could not rely on the USTA suspension because MBC did not learn of the suspension until after Hodge's termination. We granted MBC's application for discretionary review, and this appeal followed.

> The appropriate standard of review to be applied to issues of fact on writ of certiorari to the superior court is whether the decision below was supported by *any evidence*. On appeal to this Court, our duty is not to review whether the record supports the superior court's decision but whether the record supports the initial decision of the local governing body or administrative agency. Neither the superior court nor this Court reweighs credibility determinations of the factfinder. In other words, because the factfinder in the initial proceedings is charged with weighing the evidence and judging the credibility of the witnesses, the superior court and this Court must view the evidence in the light most favorable to the factfinder's decision and must affirm the decision if there is *any evidence* to support it, even when the party challenging the factfinder's conclusions presented evidence during the initial proceedings that conflicted with those conclusions.[2]

With these guiding principles in mind, we now turn to MBC's claims of error.

---

[2] *Bull*, 295 Ga. App. at 552 (1) (citations and punctuation omitted; emphasis in original).

1. In related claims of error, MBC argues that the superior court erred in substituting its own judgment for that of the hearing officer and finding that the hearing officer's decision was arbitrary and capricious. We agree.

As noted above, we will affirm the hearing officer's decision if there is any evidence to support it.[3] Applying this standard of review, the evidence presented before the hearing officer supported his conclusion that MBC was justified in terminating Hodge because of his excessive absences. Hodge's suspension due to the lawsuit qualified as an excused absence because it was "an unforeseen need or problem which require[d] being away from the job." Hodge's suspension also lasted for approximately eight months, while MBC's personnel policy prohibited any employee from remaining on the payroll after being out of work for six months. Finally, MBC presented testimony before the hearing officer that Hodge's physical presence was necessary to properly manage his employees and the facilities, and that his absence caused extra work for his employees. Although the hearing officer did mention the USTA suspension in his order — and MBC did not know of the suspension until after the termination — the USTA suspension was not the sole basis for the hearing officer's decision, and it only bolstered the hearing officer's previous

_____

[3] See *Bull*, 295 Ga. App. at 552 (1).

finding that Hodge's absence from the tennis facilities hindered his ability to perform his duties.

Accordingly, because there was some evidence to support the hearing officer's decision, the superior court erred in reversing the hearing officer.[4]

2. In his response brief, Hodge argues that we can affirm the superior court under the "right for any reason doctrine[,]" because he contends that MBC did not properly prove the employment regulations at issue. We disagree.

"It is well established that neither this Court, nor the superior courts, may take judicial notice of city or county ordinances, which instead must be alleged and proved. And likewise, rules and regulations of a state agency, county, municipality, or private agency, unless published by authority, cannot be judicially noticed."[5] A party may properly prove an ordinance or regulation through one of two methods: (1) "by production of the original or of a properly certified copy[;]" or (2) "[i]f the

---

[4] See *Bull*, 295 Ga. App. at 555 (1) (a) (reversing the superior court's reversal of the hearing officer because evidence presented to the hearing officer supported the hearing officer's decision); *Solinet v. Johnson*, 280 Ga. App. 227, 229 (633 SE2d 626) (2006) (same); *Coweta County v. Henderson*, 270 Ga. App. 153, 155 (606 SE2d 7) (2004) (same).

[5] *Dowdell v. Fitzgibbon*, 335 Ga. App. 37, 39 (778 SE2d 414) (2015) (punctuation and footnotes omitted).

ordinance or regulations are set forth verbatim in the pleadings or an uncertified copy is attached to the complaint and the defendant admits the ordinance or regulations in the answer[.]"[6] In this case, Hodge attached the relevant portions of the employment policy in his certiorari petition, and MBC admitted to the policy in its answer. The policy was therefore properly proved before the superior court.[7] Further, even if Hodge was correct in this contention, we would still reverse, because the superior court relied upon the employment policy in its decision.[8]

*Judgment reversed. Miller, P. J., and Markle, J., concur.*

---

[6] *Prime Home Properties v. Rockdale County Bd. of Health*, 290 Ga. App. 698, 700 (1) (660 SE2d 44) (2008) (citations and punctuation omitted).

[7] See *Outdoor Systems v. Cherokee County*, 243 Ga. App. 406, 408 (1) (533 SE2d 446) (2000).

[8] See *Dowdell*, 335 Ga. App. at 40 (reversing the decision of the superior court because copies of the regulations at issue were not properly before the court).